## Powell v. Powell et al.

(Decided March 8, 1935.)

H. L. JAMES, Jr., and J. R. LAYMAN for appellant.

FAUREST & FAUREST for appellees.

OPINION OF THE COURT BY DRURY, COMMISSIONER—
Affirming.

Jesse Powell began this action in an effort to set aside two deeds he had made to his son Hobart Powell. The trial court decided against him, and he appeals.

On July 21, 1930, Jesse Powell conveyed to Hobart Powell three small tracts of land aggregating about forty acres in one of which the grantor owned but a half interest, hence that was all he could convey. How large this tract was does not appear. The grantor retained possession and control of all this land during his life, and the grantee undertook to care for, board and clothe the grantor, to pay his doctor's bills and burial expenses, and to pay to grantor's estate $800, when grantor died.

Five days later the grantor executed a second deed to Hobart Powell by which he released him of all obligations to him and reduced the sum he was to pay his estate to $600. In a little over six months, Jesse Powell began this action to set aside those deeds because they were made, so he says, without consideration and procured by undue influence.

Jesse Powell is and for many years has been a very fleshy man, weighing over 250 pounds. About twenty years ago, he underwent a strain that resulted in a hernia from which he has been a great sufferer. He reared a family of three boys and four girls. Of these only Edd, Abe, Hobart, and Mary Carr are now living. Three of his daughters are dead, two of whom left children.

## The Agreement With Hobart.

About twenty years ago, the two older boys left home. Hobart testifies his father told him he had no home and did not know what he was going to do. He was then a tenant farmer. He told his son he was get-

ting old and broken down, was suffering from this hernia and from rheumatism, and all the rest had left him, and he asked Hobart to quit school and go to work and they would put their money together and buy a home for Mr. Powell and his wife, and that if he would do that, it would be his when his parents were gone. Hobart did so, and after about four more years of tenant farming they had got together about $3,500 with which the bulk of this property was purchased. Hobart continued to live at home, he and his parents struggled on together and later bought other property which like the first was deeded to Jesse Powell. When this was paid for, Hobart worked for himself for about three years but lived at home, and he testifies he worked there and more than paid his way. Finally Hobart married, and worked this land on the shares. On August 27, 1929, Hobart's mother died. His father was almost crazed by grief. He did not know what to do. He had made a will by which he gave all but about ten acres of this land to Hobart. One of the older boys heard of this and said if he did he would spend the last dollar lawing about it.

Mr. Powell then executed the first deed. Later, so Hobart says, he concluded he had been too hard on his son and he made the second deed. The other children remonstrated and this litigation resulted. Mr. Jesse Powell admits he told Hobart he would give him this land when he died, but says he did not tell him he would give him the house. The house was bought with money from crops produced on the land. Mr. Powell says he thinks Hobart should have more than his other children, but he ought not to have it all. He does not get it all. Mr. Powell has some twelve or fifteen acres left worth about $120 an acre. He also has three cottages worth about $7,500, one-half of which is his absolutely and in the other half he has a life estate. He has, as long as he lives, the property deeded to Hobart. Everything indicates Mr. Powell knew exactly what he was doing when he made these deeds. He testifies like a man of intelligence. The evidence of lack of capacity and undue influence is so meager as to be unimpressive. A careful reading of this record results in the conviction not only that Mr. Powell made these deeds as his free and voluntary acts, knowing what he was doing and free from undue influence, but that he did just what he ought to have done.

Mr. Powell does not deny making a contract with his son. A parent may make a contract with his child to pay for the latter's services. Engleman's Ex'rs v. Engleman, 1 Dana (31 Ky.) 437; Terry v. Warder, 78 S. W. 154, 25 Ky. Law Rep. 1486.

He took Hobart out of school. Mr. Powell's present fortune is the fruition of Hobart's labor and fidelity, and now after Hobart has given his youth and young manhood to the fulfillment of the contract he made with his father, it should be a source of pride to the latter to have such a son; he should be glad to comply with his contract and reward his son for his labor and he should shut his ears to the clamor of his other children. The chancellor found he had made these deeds willingly and understandingly and there is nothing in this record to justify the overturning of his finding.

Judgment affirmed.